IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mario Anthony Diamond,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-24-02574-PHX-SMB<br><br>**ORDER** |

In this Social Security case, United States Magistrate Judge Camille Bibles has issued a report and recommendation (Doc. 25 ("R&R")) recommending that decision of the Administrative Law Judge ("ALJ") be affirmed. The Magistrate Judge advised the parties that they had fourteen days to file objections to the R&R. (*Id.* at 51 (citing Fed. R. Civ. P. 72).) Plaintiff Mario Anthony Diamond filed an objection (Doc. 26), and the Commissioner filed a response to the objection (Doc. 27). Plaintiff objects to the R&R on two bases: (1) the ALJ erred when she rejected Dr. Gallardo-Prado's assessment; and (2) the ALJ erred when she rejected Plaintiff's symptom testimony absent specific, clear, and convincing reasons for doing so. (*See* Doc. 26 at 4, 7.)

The Court has considered the objections, the ALJ decision, and the briefing prior to the R&R. The Court has also reviewed the R&R de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (stating that the court must make a de novo determination of those portions of the R&R to which specific objections are made). The Court agrees with the Magistrate Judge's determinations, accepts the recommended decision within the meaning

of Federal Rule of Civil Procedure 72(b), and overrules Petitioner's objections. *See* 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate").

The Court will not repeat the extensive summary of Plaintiff's medical history done by the ALJ and the Magistrate Judge. (*See* Doc. 25 at 5–34.) Suffice it to say, Plaintiff has severe impairments from degenerative disc disease and obesity. (*Id.*) His treatment records span from March 2020 to May 2023. (*Id.*) The treatment included imaging, medication, physical therapy, surgery, and use of a walker. (*Id.*) And Plaintiff's records reflect that his symptoms and pain improved through physical therapy and over-the-counter Tylenol. (*Id.*)

**A. Dr. Gallardo-Prado's Opinion**

Plaintiff presents his first objection through five separate arguments: (1) the ALJ "cherry-pick[ed]" evidence to reject Dr. Gallardo-Prado's assessment; (2) the R&R and ALJ failed to consider record evidence of manipulation limitations; (3) the R&R and ALJ misapprehended Dr. Gallardo-Prado's measure of Claimant's physical condition as it related to his ability to concentrate and maintain pace in a work setting; (4) the ALJ failed to provide evidence to show Dr. Gallardo-Prado's assessment was inconsistent with the record and the R&R ignored the consistent imaging of Plaintiff's lumbar spine; and (5) the ALJ did not specifically explain how Dr. Gallardo-Prado's assessment was inconsistent with Claimant's daily living activities. (*Id.* at 5–7.) The Commissioner responds by citing to and arguing those portions of the ALJ decision and the record that support the agency's decision. (Doc. 27 at 3–6.)

The Court will address Plaintiff's objections in the order in which they appear. First, the ALJ did not cherry pick evidence, as her decision discounted Dr. Gallardo-Prado's opinion only after discussing its internal inconsistencies and comparing it to the other objective medical evidence on the record. (*See* Doc. 13-3 at 31–32.) Reading the entire ALJ decision shows that Plaintiff's limitations were not as extreme as Dr. Gallardo-Prado reported, and thus the ALJ properly rejected his opinion. (*See, e.g.*, *id.* at 19–34.) Second,

the ALJ and R&R correctly considered evidence of Plaintiff's manipulation limitations, including Dr. Gallardo-Prado's own examination, which showed that Plaintiff had a normal range of motion and strength in his upper extremities. (*Id.*; *see also* Doc. 14-3 at 38–39 (Dr. Gallardo-Prado's findings).) Third, whether the ALJ considered Dr. Gallardo-Prado's assessment as pertaining to Plaintiff's cognitive function instead of his physical impairments impact on his concentration and ability to work is of no moment, as the ALJ properly articulated why the record did not support cognitive limitations or Dr. Gallardo-Prado's assessment of Plaintiff's physical limitations. (Doc. 13-3 at 31–32.)

Fourth, the ALJ described Plaintiff's medical history at length before discussing why Dr. Gallardo-Prado's "checked boxes on a form with minimal explanation for the quite extreme limitations assessed" did not comport with other record evidence. (Doc. 13-3 at 31–32.) The ALJ also discussed why, despite positive findings, the total record did not otherwise support claims of debilitating limitations. (*See id.* at 25–29.) It is not error for an ALJ to reject the conclusory opinion of a physician, even if that physician reaffirms Plaintiff's previously documented ailments. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") At bottom, ALJ properly articulated reasons supported by the record to discredit Dr. Gallardo-Prado's limitations assessment. Fifth, reading the entire ALJ decision, rather than specifically assaulting—or cherry picking—the section regarding Dr. Gallardo-Prado's opinion, shows that Plaintiff's objection is unsupported. Indeed, the ALJ discussed the evidence of Plaintiff's functional status, e.g., ability to grocery shop, go to the movies, prepare food, and found that Dr. Gallardo-Prado's assessment of extreme limitations was inconsistent with Plaintiff's actual abilities. (*See* Doc. 13-3 at 28, 31–32); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."). Thus, the ALJ decision provided sufficient explanation supported by other substantial record evidence to find Dr. Gallardo-Prado's

assessment inconsistent with Plaintiff's daily activities.

Plaintiff's objections regarding the ALJ's rejection of Dr. Gallardo-Prado's assessment are therefore overruled.

### B. Plaintiff's Symptom Testimony

Plaintiff presents his second objection through four separate arguments: (1) the ALJ cherry picked the administrative record by resting his rejection of Plaintiff's complaints on only normal or absent findings; (2) the ALJ failed to look at the entire record to evaluate improvements in Plaintiff's symptoms; (3) the ALJ erroneously failed to inquire as to the reasons for any lack of follow up treatment; and (4) the ALJ did not show Plaintiff's routine activities were inconsistent with any particular symptoms. (Doc. 26 at 7–8.) The Commissioner again responds by citing to and arguing those portions of the ALJ decision and the record that support the agency's decision. (Doc. 27 at 6–10.)

Again, the Court will address the objections in the order in which they appear. First, the ALJ did not cherry pick the record to support her decision. Instead, the ALJ recognized positive findings, including Plaintiff's intermittent issues with gait and lumbar disc degeneration, normal findings, including normal gait and full strength, and noted a concerning lack of evidence corroborating any of Plaintiff's complained of falls, lack of balance, or need of assistance for walking. (Doc. 13-3 at 26–27.) The ALJ took a holistic view of the record, including objective evidence of Plaintiff's condition and his supporting testimony, to reject Plaintiff's testimony. (*See id.*)

Second, the ALJ considered the entire record when evaluating Plaintiff's improved symptoms. The ALJ discussed Plaintiff's improvements following his lumbar spine operation, noting that Plaintiff had, among other positive outcomes, normal range of motion and no tenderness to palpation. (Doc. 13-3 at 28.) The ALJ highlighted that Plaintiff's symptoms, over the course of the treatment period, tended to improve with a conservative routine course of care, like physical therapy, and occasional over-the-counter Tylenol. (*Id.* at 27–28); *Poarra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding

severity of an impairment."). The ALJ therefore articulated sufficient reasons based on the treatment records to discount Plaintiff's subjective reports of debilitating pain. *See Tomassetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008).

Third, the ALJ explicitly asked Plaintiff why he failed to follow up with certain providers. For example:

> Q: In February of 2021, a Grayson Halliday at Core Institute wanted you to see a neurologist. Do you know if you went to see a neurologist?
>
> A: No.
>
> . . . .
>
> Q: No? Okay. And Why did you not?
>
> A: I don't remember . . . I'm pretty sure I've never seen one.

(Doc. 13-3 at 55.) The record also shows that Plaintiff failed to follow up on an "EMG test" for his legs because Plaintiff was "not ready for it." (Doc. 14-3 at 34.) The ALJ properly inquired into Plaintiff's reasons for failing to follow up with treatment. At the end of the day, the evidence was insufficient to justify Plaintiff's failure to follow up with treatment given his testimony of debilitating pain. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) ("According to agency rules, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." (citation altered)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Fair v. Bowen*, 855 F.2d 597, 604 (9th Cir. 1989) (finding that the ALJ did not err in discrediting a plaintiff's testimony as to pain when the "[plaintiff] ha[d] not put forward any evidence that reconcile[d] the inconsistency between his words and his actions"), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Fourth, the ALJ listed activities that Plaintiff engaged in and noted that while "such activities are not determinative of the ability to work" they do help "depict the individual's capacities over a period of time," and in Plaintiff's case, "suggest[ed] a greater degree of

functioning than alleged." (Doc. 13-3 at 29.) The Ninth Circuit has previously found that an ALJ who relied on similar evidence of daily activities to discredit a claimant's symptom testimony did not err. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). Here, the ALJ sufficiently articulated why Plaintiff's daily activities—such as household chores, grocery shopping, and going out to the movies—generally belied his contention that his pain was so debilitating as to preclude functional status and work ability. (Doc. 13-3 at 29.)

At bottom, the ALJ reasonably determined that, based on the record evidence, Plaintiff's subjective complaints of pain were not supported. Plaintiff's objections are therefore overruled.

Accordingly,

**IT IS THEREFORE ORDERED** that Report and Recommendation of the Magistrate Judge (Doc. 25) is accepted;

**IT IS FURTHER ORDERED** affirming the September 28, 2023 decision of the Administrative Law Judge;

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this case.

Dated this 14th day of August, 2025.

Honorable Susan M. Brnovich
United States District Judge